**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
NATHAN E. WILSON,                 )
                                  )
               Plaintiff,         )
                                  )
          v.                      )          1:16cv899
                                  )
FAIRFIELD INN SUITES –            )
MARRIOTT, RDU,                    )
                                  )
               Defendant.         )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to Participate in Discovery and Failure to Prosecute and Motion to Stay Dispositive Motion Deadline" (Docket Entry 53) (the "Dismissal Motion").[1] For the reasons that follow, the Court should grant the dismissal request and should deny as moot the stay request.

**FACTUAL AND PROCEDURAL HISTORY**

In July 2016, Nathan E. Wilson (the "Plaintiff") initiated this action by filing (i) a Complaint (Docket Entry 2) against Fairfield Inn Suites - Marriot, RDU (the "Defendant"), (ii) an application to proceed in forma pauperis (Docket Entry 1) (the "IFP Application"), and (iii) a motion to appoint counsel (Docket Entry

---

[1] For legibility purposes, this Opinion generally omits all-cap font in quotations from the parties' materials.

3) (the "First Appointment Motion").[2]  Concluding that, "[i]n its present form, [the] Complaint does not state a claim, but instead merely identifies a cause of action and directs the Court to some attachments, none of which set forth a coherent set of factual allegations that plausibly could support the identified cause of action," the Court (per the undersigned) entered an order deferring ruling on the IFP Application and "affording Plaintiff an opportunity to submit an amended complaint on or before 08/08/2016."  (Text Order dated July 15, 2016.)  In August 2016, Plaintiff filed an amended complaint (Docket Entry 7), and the Court (per the undersigned) granted the IFP Application (see Docket Entry 8 at 1).

Because Plaintiff maintained that "[he was] NOT qualified to [a]gree to any discovery schedule until the [C]ourt rule[d] on [his] motion for court appointed counsel" (Docket Entry 19 at 1 (emphasis in original)), the case proceeded to an Initial Pretrial Conference on October 31, 2016, at which Plaintiff asked "the [C]ourt to rule on [his] request for court appointed counsel in the interest of adequ[a]te preparation for discovery and tr[ia]l"

---

2    As grounds for appointment of counsel, the First Appointment Motion asserts that (i) "Plaintiff has exercised considerable effort over the previous months in the pursuit of professional representation," (ii) the "case has considerable consequences for the [P]laintiff and over 1000 hourly workers with the Defendant," and (iii) "[t]he interests of the United States are served in the Court appointment of professional representation." (Docket Entry 3 at 1 (emphasis in original).)  [Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.]

(id.). (See also Minute Entry dated Oct. 31, 2016.) Finding that "Plaintiff has not established the requisite exceptional circumstances warranting [such appointment]," the Court (per the undersigned) denied the First Appointment Motion (First Text Order dated Oct. 31, 2016), and issued a case-management order (Second Text Order dated Oct. 31, 2016 (the "Scheduling Order")), which adopted "Defendant's Proposed Discovery Plan" (Docket Entry 18 at 1),

> with the following modifications, as agreed to and/or ordered by the Court after argument at the hearing held this day: 1) the parties shall serve Initial Disclosures required by Federal Rule of Civil Procedure 26(a)(1) by 11/30/2016; . . . and 3) the Court will not order mediation at this time, but the parties shall file a Joint Status Report setting out their shared or individual views about the advisability of mediation and/or the identity of an appropriate mediator by 11/30/2016.

(Second Text Order dated Oct. 31, 2016.) The Scheduling Order thus established a deadline for completing discovery of April 30, 2017. (See Docket Entry 18 at 2; see also Docket Entry dated Nov. 1, 2016.)

Pursuant to the Scheduling Order, Defendant filed a mediation status report (Docket Entry 20 (the "Defendant's Report")), which detailed developments in the case following the Initial Pretrial Conference, including that "Plaintiff ha[d] since filed an 'Informal Brief' with the Fourth Circuit Court of Appeals concerning the denial of his request for appointed counsel" (id. at 2). Defendant's Report also attached correspondence from Plaintiff

to Defendant's counsel dated November 14, 2016, in which Plaintiff expressed reservations regarding the cost of mediation (Docket Entry 20-1 (the "November Letter") at 2-3) and stated that "[he was] continuing to consider compliance with the thirty day time line for a list of witnesses and documents to support [his] claims" (id. at 3). Given these developments, "Defendant request[ed] that the Court excuse the parties from participating in mediation." (Docket Entry 20 at 2.) Plaintiff filed an objection to Defendant's request (see Docket Entry 22 at 1-2), in connection with which he submitted a copy of his Informal Brief (see id. at 4 (containing certificates of service for Plaintiff's "[I]nformal [B]rief to the Fourth Circuit regarding [his] motion for court appointed counsel denied October 31, 2016," and "'Objection' to Defense Motion, Report to Be 'Excused' from Mediation" (emphasis in original)); see also Docket Entry 23 at 2-3, Docket Entry 23-3 at 1).[3] The Clerk's Office construed Plaintiff's submission of the Informal Brief as a notice of appeal from the order denying the First Appointment Motion. (See Docket Entry dated Dec. 29, 2016.)

On January 17, 2017, Plaintiff submitted a motion for appointment of counsel and extension of time to respond to Defendant's discovery requests. (Docket Entry 26 (the "Second Appointment Motion") at 1.) As grounds for appointment of counsel,

---

3    The November Letter appears as "Attachment C" to the Informal Brief. (See Docket Entry 23 at 6-7.)

4

the Second Appointment Motion asserted that, "[u]ntil such time as court appointed counsel is provided[,] Plaintiff does not have the experience, education[,] or economic ability to respond to these [discovery] requests in a manner that does not compromise this pro se Plaintiff." (Id.) On January 27, 2017, the Court (per the undersigned) denied the Second Appointment Order, ruling, inter alia, that:

> To the extent Plaintiff seeks an order indefinitely extending his obligation to respond to pending (or future) discovery requests until the Court appoints him counsel, the Court denies that request, but without prejudice to Plaintiff presenting a future motion requesting a finite (reasonable) amount of additional time to respond to discovery requests. . . . To the extent Plaintiff seeks an order appointing counsel for him based on the same rationale the Court thoroughly considered and addressed previously, the Court denies relief, but without prejudice to Plaintiff presenting a future motion raising any new grounds that would warrant appointment of counsel.

(Text Order dated Jan. 27, 2017.)

On February 24, 2017, Plaintiff submitted another request for appointment of counsel and extension of his discovery deadlines. (See Docket Entry 31 (the "Third Appointment Motion") at 3.) In the Third Appointment Motion, "pro se Plaintiff . . . respectfully request[ed] 180 days from this date to respond to initial discovery requests and serve initial discovery requests to Defendant in preparation for trial." (Id. at 1.) In support of that request, Plaintiff asserted that "[t]he definitive time-line . . . . allows the Court and referral to the Fourth Circuit to rule on Plaintiff's

request for <u>court appointed counsel</u>." (<u>Id.</u> (emphasis in original).) "Plaintiff further request[ed] court appointed counsel for preparation of discovery and trial. Defendant has demanded a deposition of the Plaintiff by April 2017. In accordance with an original trial schedule set October 31, 2016, this schedule must be reset based on a calendar for trial established for after January 2018 at a time and place to be yet determined." (<u>Id.</u>)[4] Moreover, "Plaintiff object[ed] to this deposition demand until court appointed counsel is provided for preparation that does not compromise the case of Plaintiff due to difficulties with disability, inexperience[,] and education." (<u>Id.</u>) Finally, Plaintiff maintained that "[t]he only way to prepare for this E.E.O.C. action, discovery, deposition[,] and trial is with <u>court appointed counsel</u>." (<u>Id.</u> at 2 (emphasis in original).) "In summary, [Plaintiff] respectfully request[ed] . . . a 180 day time-frame [be] allowed for discovery in this matter and court appointment of counsel" as well as "[f]urther delay of Defendant['s] demand of depositions until further ruling on this motion and further ruling on 'Informal Brief' to the Fourth Circuit . . . filed February 6, 2017." (<u>Id.</u> at 3.)

The Court (per the undersigned) denied the Third Appointment Motion, explaining that the requested extension would delay

---

4  In January 2017, the Clerk set this matter for trial on January 8, 2018. (<u>See</u> Docket Entry 27 at 1.)

6

completion of summary judgment briefing until after the scheduled trial date. (See Docket Entry 34 (the "Appointment Order") at 3.) The Appointment Order further explained that the grounds upon which Plaintiff sought the extension — "'allow[ing] the Court and . . . the Fourth Circuit to rule on Plaintiff's request for court appointed counsel'" (id. (ellipsis in original)) — lacked merit. In particular, the Appointment Order observed that Plaintiff cannot "obtain interlocutory review of the counsel appointment issue in the Fourth Circuit" (id. (collecting cases))[5] and that the Third Appointment Motion failed to "show exceptional circumstances entitling Plaintiff to appointment of counsel" (id. at 4; see also id. at 4-5 (analyzing proffered grounds for appointment)).

In response to that denial, Plaintiff submitted a motion requesting "Court Supervision of [his] Deposition." (Docket Entry 35 at 1.) In relevant part, that motion states:

> Plaintiff has submitted that on October 31, 2016[,] the [C]ourt extended discrimination under Color of Law in not conducting a requisite examination of extenuating circumstances in accordance with the A.D.A. [i]n the denial of court appointed counsel to Plaintiff. Court supervision and monitoring of the Defendant Demand for Deposition creates further opportunity to conduct a requisite examination for extenuating circumstances and mitigate the extension of discrimination concerns of Plaintiff.

_____

5 The Fourth Circuit subsequently dismissed Plaintiff's appeal (see Docket Entries 44, 45), holding that "[t]he orders [Plaintiff] s[ought] to appeal [we]re neither final orders nor appealable interlocutory or collateral orders" within the Fourth Circuit's jurisdiction. (Docket Entry 44 at 2.)

(Id. (emphasis in original).)  The Court (per the undersigned) promptly denied Plaintiff's deposition supervision request.  (Text Order dated Mar. 14, 2017.)

That same day, Defendant moved to compel Plaintiff's responses to Defendant's "First Set of Interrogatories and First Set of Requests for Production" (the "Written Discovery"), which Defendant served upon Plaintiff on December 30, 2016 (Docket Entry 37 (the "First Motion to Compel") at 2).  (See Docket Entries 37, 38, 38-1.)  In response to the First Motion to Compel, Plaintiff filed a motion for "Extension of Time to Answer Defendant['s] Discovery Demands . . . and Request for Further Review of Court Advance of Discrimination under Color of Law and Court Failure to Conduct Requisite Examination [o]f Extenuating Circumstances in Denial of Court Appointed Counsel in Violation of the ADA." (Docket Entry 39 at 1 (emphasis in original).)  In relevant part, that motion requested a ninety-day extension of time to answer the Written Discovery (id. at 1) and "further object[ed] to Defendant['s] demands for discovery until such time as professional counsel i[s] available to avoid the fatal compromise of this case due to Plaintiff's difficulties with disability, experience[,] and education" (id. at 2; see also id. ("Plaintiff further objects to Defendant's discovery demands until such time as this pro se Plaintiff is able to secure representation able to address the

overwhelming financial and professional representation of Defendant
. . . .")).

The Court (per the undersigned) granted the First Motion to
Compel and denied Plaintiff's extension request. (Docket Entry 41
(the "Discovery Order") at 15.) The Discovery Order required
Plaintiff to respond to the Written Discovery by May 12, 2017, and
warned that "[f]ailure to comply with this [Discovery] Order may
result in dismissal of this action." (Id.) It also directed
Plaintiff to "pay Defendant's reasonable expenses, including
attorney's fees, incurred in making the [First] Motion to Compel."
(Id.)[6]

Next, Defendant moved to compel Plaintiff's deposition and to
extend the deadlines for discovery and dispositive motions to
accommodate his deposition. (See Docket Entries 42, 43.) In
support of its request, Defendant explained that Plaintiff failed
to attend depositions noticed for April 20, 2017, and April 27,
2017. (Docket Entry 42 (the "Second Motion to Compel") at 2-3.)
Plaintiff did not respond to the Second Motion to Compel (see
Docket Entries dated Apr. 27, 2017, to June 8, 2017), which the
Court (per the undersigned) granted on June 8, 2017 (see generally
Docket Entry 46 (the "Deposition Order")). The Deposition Order

_____

6 After the parties' opportunity to address the amount of
expenses, the Court (per the undersigned) ordered Plaintiff to "pay
Defendant $1,833 as the reasonable expenses Defendant incurred in
making its [First] Motion to Compel." (Docket Entry 49 at 3.)

9

required Plaintiff to appear for a deposition by June 30, 2017, and warned that "[f]ailure to comply with this [Deposition] Order may result in the dismissal of this action." (<u>Id.</u> at 4.) The Deposition Order also directed Plaintiff to pay Defendant's expenses incurred "in making its [Second] Motion to Compel and due to Plaintiff's failure to appear at his depositions on April 20 and 27, 2017." (<u>Id.</u> at 5.)[7] Finally, the Deposition Order extended the deadline for dispositive motions to July 31, 2017. (<u>Id.</u>)

On June 16, 2017, Defendant served on Plaintiff its "Second Amended Notice of Deposition," which scheduled a deposition for 8:30 a.m. on Friday, June 30, 2017. (<u>See</u> Docket Entry 54-1 at 10-11 (the "Deposition Notice").) In response, Plaintiff submitted an "Objection" dated June 23, 2017 (<u>id.</u> at 12-15; <u>see also</u> Docket Entry 50 (same)), which, <u>inter alia</u>, presented Plaintiff's "request in response to the court ordered 'Motion to Compel' that the demand for deposition be scheduled from 10:00 a.m. to 3:00 p.m." to accommodate his work schedule (<u>id.</u> at 13). On June 27, 2017, Defendant's counsel sent Plaintiff (via email and regular mail) a letter indicating that she received his Objection "[t]oday" and, although she could not agree to limit the deposition to the specified period, would, "as an accommodation to [his] request,

_____

7 After the parties' opportunity to address the amount of expenses, the Court (per the undersigned) ordered Plaintiff to "pay Defendant $2,273.10, as the reasonable expenses Defendant incurred in connection with its [Second] Motion to Compel." (Docket Entry 58 at 4.)

10

. . . agree to begin at 9:00 a.m. on June 30th." (Docket Entry 54-1 at 18; see also id. at 17; Docket Entry 51 at 3.) In the "Statement of Nonappearance of [Plaintiff] . . . on the 30th of June 2017, commencing at 10:15 a.m." (Docket Entry 54-1 (the "Nonappearance Statement") at 2), Defendant's counsel states that Plaintiff failed to respond to both this letter and an email she sent him at 9:42 a.m. on June 30, 2017, asking whether he "plan[ned] on attending [the deposition]" (id. at 19). (See id. at 6.)

In July 2017, Plaintiff submitted an amended version of his June Objection, which contains certain handwritten annotations. (See, e.g., Docket Entry 51 (the "Second Objection") at 1-2, 4 (containing at bottom of the page the handwritten notation, "'Objection' to Deposition 6/30/17 and Lack of Notice" (emphasis in original)).)[8] In particular, the Second Objection emphasizes Plaintiff's request that the "deposition be scheduled from 10:00 a.m. to 3:00 p.m." to accommodate his work schedule (id. at 2 (emphasis in original)). It concludes with the handwritten statement, "I DID NOT AGREE to THIS SCHEDULE!!!!!" (Id. at 3 (emphasis in original).)

---

8    The Second Objection bears the date of July 1, 2017 (see Docket Entry 51 at 1), and the postmark of July 3, 2017 (see Docket Entry 51-1 at 1). The Clerk received the Second Objection on July 5, 2017. (See id.)

On July 18, 2017, Defendant filed the instant Dismissal Motion, asking that the Court dismiss this action pursuant to Rules 37 and 41 of the Federal Rules of Civil Procedure (the "Rules"). (Docket Entry 53 at 1.) In support of that request, Defendant detailed Plaintiff's various discovery failures, including his failure to comply with the Discovery Order and the Deposition Order. (See Docket Entry 54 at 2-6.) Defendant additionally requested a stay of the deadline for filing dispositive motions pending the Dismissal Motion's resolution. (Docket Entry 53 at 1.)

On August 8, 2017, Plaintiff submitted his "Response [to] Defendant['s] Demand for 'Summary Judgment' and Dismissal Received July 21, 2017." (Docket Entry 56 (the "Response") at 1.) In the Response, Plaintiff reiterated his challenges to the denials of his requests for appointment of counsel (see id. at 1-2) and asked the Court to, inter alia, conduct "direct examination" of certain third parties (see id. at 6-7) to ascertain their involvement in "burdensome and overwhelming discovery demands" made to "this pro se Plaintiff" (id. at 6) in a North Carolina Industrial Commission matter (see id. at 3-6). The Response also "proposed" that "[e]very economic sanction that this Court imposes on this Plaintiff . . . be paid at $25.00 per month while further referral to the Fourth Circuit . . . for further ruling on this E.E.O.C. action." (Id. at 6.) The Response did not, however, dispute the representations regarding Plaintiff's discovery failures that

Defendant made in the Dismissal Motion materials, including the Nonappearance Statement.  (See generally id. at 1-7.)

**DISCUSSION**

### I. Applicable Standards

"If the plaintiff fails to prosecute or to comply with the[R]ules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  In determining whether to dismiss under Rule 41(b), the Court evaluates "(i) the degree of personal responsibility of the plaintiff; (ii) the amount of prejudice caused the defendant; (iii) the existence of a history of deliberately proceeding in a dilatory fashion, and (iv) the existence of a sanction less drastic than dismissal."  Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989).  In addition, the Court may dismiss as a sanction for a plaintiff's failure to (i) obey a discovery order, see Fed. R. Civ. P. 37(b)(2)(A)(v); (ii) attend his deposition, see Fed. R. Civ. P. 37(d)(1)(A)(i) & (3); or (iii) respond to interrogatories and requests for production of documents, see Fed. R. Civ. P. 37(d)(1)(A)(ii) & (3).  See also Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989) (observing that Rule 37 "gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders").  In evaluating whether to dismiss pursuant to Rule 37, the Court considers "([i]) whether the noncomplying party acted in bad faith; ([ii]) the amount of

prejudice his noncompliance caused his adversary[] . . .; ([iii]) the need for deterrence of the particular sort of noncompliance; and ([iv]) the effectiveness of less drastic sanctions." Id.

As such, "[t]he legal standard for dismissals under Rule 37 is virtually the same as that for dismissals . . . under Rule 41." Carter v. University of W. Va. Sys., Bd. of Trs., No. 93-1905, 23 F.3d 400 (table), 1994 WL 192031, at *2 (4th Cir. 1994). In exercising its discretion under Rules 37 and 41, the Court should remain mindful that "dismissal is not a sanction to be invoked lightly," Ballard, 882 F.2d at 95, but also that dismissal "'must be available . . . in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent,'" Davis v. Williams, 588 F.2d 69, 71 (4th Cir. 1978) (quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976)). Furthermore, if a party fails to obey an order after receiving a warning that such failure risks dismissal, the Court will "ha[ve] little alternative to dismissal," as "[a]ny other course would . . . place[] the credibility of the [C]ourt in doubt and invite[] abuse." Ballard, 882 F.2d at 96.

## II.  Analysis

As an initial matter, Plaintiff proceeds pro se and thus "is solely responsible for h[is] actions in this case." Rowley v. City

of N. Myrtle Beach, Civ. Action No. 4:06-1873, 2008 WL 4831422, at *4 (D.S.C. Oct. 31, 2008). Plaintiff admits that, by June 23, 2017, he had "received [Defendant's] most recent notice of deposition and the [Deposition O]rder." (Docket Entry 50 at 1; Docket Entry 51 at 1.) Despite knowing that the Court ordered him to "appear for a deposition at a date, time, and location . . . noticed by Defendant on or before June 30, 2017" (Docket Entry 46 at 4), Plaintiff failed to appear at his scheduled deposition (see generally Docket Entry 54-1). "Plaintiff's failure to make h[im]self available for h[is] June [30], 20[17], deposition, knowing that this [C]ourt had ordered that h[is] deposition take place on or before June 30, 20[17], is evidence of bad faith." Rowley, 2008 WL 4831422, at *4; accord Ellis v. Wal-Mart Distribution, No. 3:10cv76, 2011 WL 3804233, at *2 (W.D.N.C. Aug. 2, 2011) (concluding that the plaintiff's failure to attend depositions despite receiving deposition notices "and the [c]ourt [o]rder mandating his attendance . . . . constitutes bad faith"), report and recommendation adopted sub nom. Ellis v. Distribution Tech., Inc., No. 3:10cv76, 2011 WL 3804294 (W.D.N.C. Aug. 29, 2011).[9]

_____

9    Plaintiff's contention that he did not agree to the deposition schedule (see Docket Entry 51 at 3) does not alter this conclusion. "[T]he Rules generally permit the party noticing the deposition to pick its time and location," and, "as a general principle, . . . a plaintiff must bear any reasonable burdens of inconvenience that the action represents." Crisp v. Allied Interstate Collection Agency, No. 1:15cv303, 2016 WL 2760363, at *4

Similarly, Plaintiff's failure to respond to the Written Discovery by May 12, 2017, as directed in the Discovery Order, constitutes bad faith. See Mutual Fed., 872 F.2d at 92-93. In this regard, it bears noting that, although "[p]ro se litigants are entitled to some deference from courts. . . . [,] they as well as other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible." Ballard, 882 F.2d at 96.

Furthermore, Plaintiff's repeated failures to participate in discovery, as directed by both this Court and the Rules, "clearly prejudiced" Defendant. Hanshaw v. Wells Fargo Bank, N.A., No. 2:11-cv-331, 2014 WL 4063828, at *4 (S.D. W. Va. Aug. 14, 2014). To begin with, Plaintiff failed to appear at his scheduled deposition on three separate occasions. (See Docket Entry 46 at 1-2; Docket Entry 54-1.) As a neighboring court explained in similar circumstances,

> Plaintiff's actions [in failing to appear at two depositions] have substantially prejudiced Defendant by requiring it to prepare for Plaintiff's deposition twice, engage a court reporter twice, and prepare two motions for sanctions. Defendant asserts that it has incurred thousands of dollars in attorneys' fees and expenses in connection with Plaintiff's refusals to appear for his deposition. *See Parks v. Huff*, 955 F.2d 42 (table), 1992

(M.D.N.C. May 12, 2016) (internal quotation marks omitted). Under the circumstances, including Plaintiff's "submi[ssion] that," employing his proposal, "this deposition will take more than one day" (Docket Entry 51 at 2), Defendant's refusal to agree to Plaintiff's preferred schedule did not excuse him from complying with either the Deposition Notice or the Deposition Order.

> WL 21363, at *2 (4th Cir. Feb. 10, 1992) (expense and
> lost time constitute prejudice). Plaintiff's deposition
> is an essential part of the case, and a defendant cannot
> be expected to defend a case where the person bringing
> the action refuses to participate in the discovery
> process.

Ellis, 2011 WL 3804233, at *2.[10] Plaintiff's failure to provide

responses to the Written Discovery only compounded this prejudice.

See, e.g., Mutual Fed., 872 F.2d at 93 (explaining that the

plaintiff "suffered great prejudice as a result of the defendants'

misconduct because [the plaintiff] could not prove its case . . .

without the business and bank records withheld by [a defendant]").

Indeed, Plaintiff refused to either produce responses to the

Written Discovery or sit for a deposition before the discovery

period closed. (See Docket Entry 54 at 4 ("Plaintiff did not

comply with Defendant's written discovery requests and, as of [July

18, 2017], has continued to refuse to submit answers to written

discovery."); Docket Entry 54-1 at 2, 6; see also Second Text Order

dated Oct. 31, 2016 (establishing discovery deadline of April 30,

2017); Text Order dated Apr. 28, 2017 (staying discovery deadline

pending resolution of the Second Motion to Compel); Docket Entry 41

at 15 (ordering Plaintiff to respond to the Written Discovery by

May 12, 2017); Docket Entry 46 at 4 (ordering Plaintiff to appear

for a deposition by June 30, 2017).) That course of conduct

---

10 Here, even without considering costs associated with
Plaintiff's third missed deposition, Defendant incurred more than
two thousand dollars in expenses from Plaintiff's failure to attend
his scheduled depositions. (See Docket Entries 52-1, 58.)

interfered with Defendant's ability to submit a dispositive motion within the scheduled time-frame. <u>See</u> M.D.N.C. LR 56.1(b) ("All dispositive motions and supporting briefs must be filed and served within 30 days following the close of the discovery period."); (<u>see also</u> Text Order dated Apr. 28, 2017 (staying "the 30-day period for filing dispositive motions after the close of discovery" pending resolution of the Second Motion to Compel).) Moreover, particularly given the evolving nature of Plaintiff's claims (<u>compare</u> Docket Entry 7, <u>with, e.g.,</u> Docket Entry 56), "[w]ith Plaintiff[] having failed to participate in discovery, Defendant[] cannot be expected to prepare for and participate in a trial set for [January 2018]," <u>Hanshaw</u>, 2014 WL 4063828, at *4.

In addition, as amply demonstrated by the Factual and Procedural History detailed above, "there is *only* a history of dilatory action by Plaintiff[]" in this matter. <u>Id.</u> (emphasis in original). Throughout this litigation, Plaintiff has refused to move forward with discovery unless and until the Court either (i) appoints him counsel (to which he lacks entitlement (<u>see, e.g.,</u> Docket Entry 34 at 4-5)) or (ii) directly supervises such discovery (despite the fact that he "has not shown good cause for such extraordinary relief" (Text Order dated Mar. 14, 2017)). (<u>See, e.g.,</u> Docket Entry 19 at 1 (asserting, in October 2016, that "I am <u>NOT</u> qualified to [a]gree to any discovery schedule until the [C]ourt rules on my motion for court appointed counsel" (emphasis

18

in original)); Docket Entry 26 at 1 (requesting, in January 2017, an extension of time to respond to Written Discovery until "court appointed counsel is provided"); Docket Entry 31 at 1 (objecting, in February 2017, to "deposition demand until court appointed counsel is provided"); Docket Entry 35 (requesting, in March 2017, Court supervision of his deposition); Docket Entry 39 at 1-2 (requesting, in April 2017, discovery response extension and objecting to discovery "until such time as this pro se Plaintiff is able to secure representation"); Docket Entry 56 at 5-6 (requesting, in August 2017, "Court direct examination" of various individuals and issues on the grounds that "[t]his pro [se] Plaintiff does <u>not</u> have the education[] or experience" necessary for such matters (emphasis in original)).)

Put simply, "the existence of a history of deliberately proceeding in a dilatory fashion is overwhelming in this case." <u>Tastee Treats, Inc. v. United States Fid. & Guar. Co.</u>, No. 5:07-cv-338, 2011 WL 2265541, at *3 (S.D. W. Va. June 7, 2011), <u>aff'd</u>, 474 F. App'x 101 (4th Cir. 2012). Moreover, in so acting, Plaintiff has "demonstrate[d] a pattern of indifference and disrespect to the authority of the [C]ourt," <u>Mutual Fed.</u>, 872 F.2d at 93, beginning with the Scheduling Order's deadline for initial disclosures (<u>see</u> Docket Entry 20-1 at 3 ("I am continuing to consider compliance with the thirty day time line for a list of witnesses and documents to support my claims.")), and continuing

through the Deposition Order (see Docket Entry 46 at 4; Docket Entry 54-1 at 2, 6). "Such conduct is unacceptable," Tastee Treats, 2011 WL 2265541, at *3, and requires a strong response, see Mutual Fed., 872 F.2d at 92 ("[W]here the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules . . . ., not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct."); see also Carter, 23 F.3d 400, 1994 WL 192031, at *2-3 (observing, in reference to a party's "repeated noncompliance with discovery requests," that "district courts have crowded dockets and '[a]ppropriate sanctions must be available to prevent [their] work from being impeded by the type of conduct disclosed by this record'" (brackets in original) (quoting Davis, 588 F.2d at 71)).

Finally, the record establishes that dismissal constitutes the only viable option to address Plaintiff's noncompliance. In April 2017, the Discovery Order imposed monetary sanctions on Plaintiff for failing to respond to the Written Discovery, ordered him to respond to such discovery by May 12, 2017, and warned him that failure to comply with the Discovery Order risked dismissal of this action. (Docket Entry 41 at 15.) Plaintiff did not comply with the Discovery Order. (See Docket Entry 54 at 1-4.) In June 2017,

the Deposition Order imposed monetary sanctions on Plaintiff for failing to attend his April 2017 depositions, ordered him to appear for a deposition by June 30, 2017, and warned him that failure to comply with the Deposition Order risked dismissal of this action. (Docket Entry 46 at 4-5.)  Plaintiff similarly failed to comply with the Deposition Order.  (See generally Docket Entry 54-1.) Plaintiff's conduct clearly demonstrates that monetary sanctions and orders for compliance lack efficacy.[11]  Morever, in light of the dismissal warnings in the Discovery Order and Deposition Order, the "[C]ourt ha[s] little alternative to dismissal.  Any other course would . . . place[] the credibility of the [C]ourt in doubt and invite[] abuse."  Ballard, 882 F.2d at 96.

In sum, every factor in the Rule 37 and Rule 41(b) analysis counsels dismissal of Plaintiff's suit.  Therefore, the Court should grant Defendant's request to dismiss this action with prejudice.

### III.  Remaining Request

Defendant additionally seeks "a stay of the July 31, 2017 dispositive motion deadline pending resolution of its [Dismissal] Motion."  (Docket Entry 53 at 1.)  The passage of this deadline

---

11  Plaintiff's Response further confirms his willingness to continue incurring monetary sanctions rather than comply with this Court's directives.  (See Docket Entry 56 at 6 ("Every economic sanction that this Court imposes on this Plaintiff is proposed to be paid at $25.00 per month while further referral to the Fourth Circuit . . . for further ruling on this . . . action.").)

without action on the stay request effectively mooted it. Furthermore, dismissal of this action as recommended herein would moot such request. Accordingly, the Court should deny as moot the stay request.

### CONCLUSION

Plaintiff's refusal to participate in discovery and his noncompliance with the Discovery Order and Deposition Order warrant dismissal of this action. That conclusion (and other considerations) moot Defendant's request to stay the deadline for filing dispositive motions.

**IT IS THEREFORE RECOMMENDED** that the Dismissal Motion (Docket Entry 53) be granted in part and denied in part as follows: this action should be dismissed with prejudice and Defendant's request to stay the deadline for filing dispositive motions should be denied as moot.

This 20th day of October, 2017.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**